We have three argued cases this morning. The first of these is number 18-1255, Lincoln Global, Inc. v. Seabery North America, Inc. Mr. Sam Fromm. Good morning, Your Honors. May it please the Court. The Board erred as a matter of law in this case when it concluded that the Atiano dissertation was a printed publication available to the public before the critical date. No evidence supports that conclusion. The test adopted by this Court in nearly every case on printed publications is that there must have been a roadmap of some kind enabling an interested researcher to find the reference with reasonable diligence. The evidence of the record here shows no such roadmap. Now, Seabery bore the burden of proof on the printed publication issue, and the record that we have is the record that they made. Seabery presented a couple of different kinds of evidence that I'll go through. They presented evidence before the critical date, so the evidence was that the dissertation was created, it was deposited in the library, and actually shelved in the library. On page 8 of the blue brief, you say that Dr. Grazer did not explain how an individual without his personal knowledge of the dissertation could have learned of the dissertation in order to request it from the librarians before the critical date. If someone was seeking subject information, just generally about, they go into the library and they say, do you have anything on welding and teaching it, would they find it that way? All I can say, Your Honor, is the record does not reveal any way to find this dissertation either by asking the librarian or by searching the stacks before the critical date. Doesn't the record show that it was catalogued? Your Honor, the record is a little bit unclear as to when it was catalogued. Dr. Grazer talked about the fact that it is, in 2016, searchable online and in the university's catalog. But I'm not really saying that. I'm asking, it was deposited in the library and cataloged without having necessarily explained what cataloging meant, but it was cataloged before the critical date, right? That's correct, Your Honor. It was deposited and shelved in the library and cataloged. What catalog means, we don't really know. But isn't it fair to assume that in libraries generally, cataloging means that you can search for it, you can find it by subject matter? Your Honor, all I can say is what's in the record. There's no evidence in the record that anyone before the critical date could have searched the University of Wyoming library. Can't we take judicial notice that library catalogs cataloged by subject matter, author, among other things? Well, Your Honor, that may be true in some libraries, but in some of this court's cases, in Ray Cronin and others, the cataloging was done by author. Well, but Cronin was in a shoebox, right? I mean, that was unique. Understood, Your Honor. That's hardly typical of libraries. I guess what we have here is the board making an inference that the cataloging was something that was easily searchable by visitors to the library by subject matter. And I guess the question is, for us, why isn't that a reasonable inference? The reason, Your Honor, is there's no basis for that inference in this record. Dr. Grazer talked about the searchability of the catalog, but that was well after the critical date. And in fact, in this court's In Re Lister case, the manuscript at issue in that case was cataloged in Westlaw. And this court found that unless you show that this was cataloged prior to the critical date, the court reversed the board in In Re Lister. Well, once again, why can't we take notice that university libraries cataloged by, among other things, author, name, and subject matter? Your Honor, I think the court can take judicial notice of facts that are well-known and indisputable. I don't know that to be true of the University of Bremen library, which is at issue here. So I don't think that it would be a fair inference to say that simply because the thesis was shelved and somehow cataloged in the university library, that it was somehow searchable by subject matter. This court has been explicit that searching by subject matter is the touchstone in some of these libraries. The evidence that today it's searchable through the online catalog by title, subject matter, author, you don't dispute that, do you? We do not dispute that, Your Honor. So then you want us to make an inference that it's possible, maybe even likely, that in 2006 the library had a different kind of online catalog system. Two responses to that, Your Honor. First, it was the Seabury's burden of proof. And all they needed to do, perhaps, was to get a librarian to submit a declaration saying that our catalog system was searchable the same way in 2016 as it was previously. So that was their burden of proof. The second response to that, Your Honor, is the case at In re Lister, I think it was 2004, involved exactly that, where the reference was cataloged in the Westlaw database, but there was no evidence of when that actually occurred. And this court said to infer that a document was cataloged before the critical date based on evidence that occurred after the critical date was pure speculation in the court's words. And so we don't think that would be a fair inference in this case, especially when... Well, that might have been more similar if in Lister it had been cataloged in the Westlaw database before the critical date, and then the question was whether it was cataloged in the same way. In other words, my recollection of Lister, you can correct me if I'm wrong, is that there wasn't any evidence of cataloging in the Westlaw database before the critical date at all. It wasn't a question of what the method of cataloging was. You're correct, Your Honor. In Lister, the issue was when was it listed in the Westlaw database. Now, there was cataloging in the Copyright Office, and this court found that that was not enough, that cataloging there was insufficient. And in fact, more recently in the Acceleration Bay case, this court affirmed a board decision that involved not meaningful cataloging. And so the type of cataloging in these cases is critical, both in Acceleration Bay, Blue Calypso, and a number of others. And so without evidence of what type of searchability existed before the critical date, there's a huge gap in the petitioner's evidence there. And it's not as if the petitioner didn't have the incentive to produce all this evidence. They had a couple of chances, both in the reply brief, they submitted additional evidence, all after we challenged the public accessibility of the Atiano dissertation. And as I said before, the record that we have is the record that they made. Well, your public accessibility was answered by them by showing that it had been checked out. Well, Your Honor, with respect to the checkout record, there's no evidence of who checked it out or how they found it. So simply having a reference that was checked out simply means that someone, from some unknown means, was able to walk into the library. It could have been Atiano himself, for all we know. So that evidence itself doesn't suggest that it was accessible. So what? He's a member of the public. The question is, why would he check out his own thesis? Why would he check out his own thesis? That doesn't make sense. I won't say that I deal with my thesis. But we just don't know how it was found. And the touchstone is whether persons in the interested field, interested in the field, were able to access it. Not whether one person was able to walk into the library and take it to the checkout. You're right that without more, we might not be satisfied that the fact that it was checked out a couple times proves that a stranger could have come in there and reasonably found it through some kind of catalog system. But we have, I think, a constellation of data points here that's more than just that. That thereby allows this checkout history to be some type of corroborating evidence of the idea that this catalog, and then there's some kind of national system catalog. And the fact that this book that's on the shelf looks like a book that was published by some publisher called Shaker Verag, right? And has all this kind of official looking indicia on the inside page. It looks like a book. It has ISBN. It has an ISBN. It reads like a, it walks and talks like a book. Why don't we just think of it as a book that says on its face that it was published in 2006 and copyrighted in 2006? Your Honor, with respect to two responses to that. First, with respect to it looks like a book. That doesn't mean that it was accessible to members of the interested public. But it was, but there's a document here that says it was published both online and in hard copy. Why can't one assume that if someone took the trouble of publishing it, that they would make it available to the public? There's hardly any point in publishing it unless you try to sell it, right? Well, Your Honor, I think the exhibit that you're referring to is exhibit 1068, which is in the record at A1617. And with respect to, let me just make sure I have the right, that would be in A1783, my apologies. 1783 in the joint appendix. With respect to that letter from Shaker Verlag about the publication, first of all, we submit that it's unauthenticated hearsay. I guess I was talking more about the pictures of the book that are at 1595 to 1606. Yes, Your Honor. The nice colored pictures of a glossy book that come right off the shelf of the library. There are nice colored pictures of a book in the library, but those pictures do not in and of themselves show that it was accessible to members of the interested public. No, but it shows that it was published. And the board is allowed to consider hearsay, right? It's not forbidden to consider hearsay. And there's this letter that says it was published. If, in fact, it had been published, wouldn't that be alone sufficient to make it accessible to the public? Well, Your Honor, I think the answer to your question depends on what the meaning of published was. The touchstone for this court's case law is not whether a document is, quote, published. It's whether it is reasonably accessible to the interested public. And so I could publish a document. Well, you've got it backwards. If it's published, it is reasonably accessible. Yes, Your Honor. Do you know how an ISBN is obtained? I do not know that, Your Honor. It's obtained from a copyright office under international treaties and domestic legislation. We don't have to take notes of it. That's the law. So if in order to have an ISBN number in the front of the book, the author had to submit it to the copyright office in Germany. And they had to review it, determine that it was a book, and issue an ISBN and issue a copyright, which they did. As a consequence, that's additional evidence, is it not? Well, Your Honor, at least in In Re Lister, that's exactly what happened, is the manuscript was first submitted to the copyright office. That was undisputed. The question before the Lister court was, could anyone have found this book or this manuscript by searching by subject matter? That's the touchstone for all of this court's cases. And even if I got a book published and put it in my office, that would not be reasonably accessible to the public, unless there was some mechanism for the public to find that book. Why would someone publish a book unless they wanted to make it available for purchase by the public? Well, Your Honor, I do believe that submitting the thesis to Schaefer Verlag was part of obtaining a dissertation. The question, I think, in the exhibit that you're looking at is, how was that book or that PDF made available to the public? How could interested members of the public find it? And I think the answer to that question- Just curious, did you, I don't know, did your side contact the publisher, Schaefer Verlag, to see if maybe there's a subset of things that they published that they hide in a locked closet or something like that? Your Honor, there's nothing in the record about our side contacting them. Okay, how about contacting the University of Bremen Library? Did you check in to see if the online catalog that they had back in 2006, maybe, was searchable by just the name of the author instead of by subject? Your Honor, there's nothing in the record about us contacting the University of Bremen Library. But there's also nothing, it was not our burden of proof, and there's also nothing in the record about the University of Bremen Library being searchable by subject matter, which is what this court requires. All right, you're out of time. I seem out of time. We'll give you two minutes for rebuttal. Thank you, Your Honor. Mr. Pimentel, is that how you pronounce it? Good morning. May it please the Court. Yes, Alijio Pimentel on behalf of L.E. Seabury North America. This whole question and appeal is whether ETI was publicly accessible prior to the critical hearing. Why didn't you submit some evidence that wasn't hearsay? Well, we did. Dr. Grosser, for example, was subjected to cross-examination. He provided testimony at deposition. He's a percipient witness. He wasn't solely the dissertation supervisor for Dr. Etiano's work, but he testified as to his knowledge dating back to 1994 of how the library catalogued, shelved, and made available to the public. This would have been a much cleaner, simpler, easier case if you had simply brought forward a declaration from the librarian or the librarian that worked at the library back in the mid-2000s and said, yes, we had an online catalog system. Yes, every time we received a book from anyone, including one of the students' dissertations, we would not only shelve that book, but we would enter that book into our online catalog system. And the online catalog system at that time, unquestionably, was searchable by subject, by title, by author. That would have been easy. Why didn't you do it like that? Instead, you're creating a situation where we have to go through a chain of inferences to get to where you want us to get to. Sure. To answer the question, it was our belief that having Dr. Grosser testify on the issue made more sense, because not only could he speak to the general practices of the library, but he could actually speak specifically for this dissertation and dissertations that were prepared, how those would be shelved. He could tell us that there was an online catalog system at that time, perhaps, because he worked at the university since 1994. But he didn't quite come out and say, and I know personally, through personal use, that that online catalog at the University of Bremen library was searchable by subject, searchable by title, searchable by author. So, of course, it was a fully indexed catalog, as that's commonly understood. Well, he did testify that right after his testimony and his declaration that he had been familiar with the library since 1994, that the online search feature was used and could be used to find the ATI dissertation, not only based on author and title, but more importantly, based on search terms. Yeah, but he used the present tense when he talked about that, instead of saying that was possible in 2006. Well, it's an inference that's drawn from the evidence, but it can be drawn either way. And on a substantial evidence standard, that's enough. The board exercised its expertise, it weighed the facts, and it read that evidence. And again, it's a constellation of evidence. It's not just Dr. Grazer. There's a circulation record. Someone actually went to the library and checked it out before the critical date. In the United States, when a copyright is issued, it includes a subject matter classification or several. This book is a novel about a Western Americana or something along those lines. How is it done in Germany? The evidence that we have of record is what's in the online record, which provides an exhibit. Give us a page number, okay? Sure. It provides... It is the screenshot that the board referred to in its final written decision as part of the evidence that it believed was sufficient to establish... A1593-94? This is the screen grab of the online catalog? That's correct. A1594 is the English translation, is that right? Yes, that's correct. That's a screen grab of the landing page for the search for the online catalog. This is the information that would have popped up in the online catalog. Again, Dr. Grazer testifies, and again, was made available for deposition to testify as to exactly what these search terms would have meant to someone who, with his technical expertise, would have used to locate the actual document. It has a book number information where the three copies that are on the shelves are actually identified. Again, there is... This is a screen grab from 2016, right? It is. But we need to be satisfied that this was available just like this before the critical date, right? Well, whether or not... Which is not 2016. Well, whether it's exactly like this or not, what we do know is Dr. Grazer testified in no uncertain terms that he not only confirmed that the dissertation had been shelved, that that, and let me quote it to make sure it's exactly right, this is at appendix 988, which is his declaration. He says he confirmed it was deposited and, quote, thereafter available for retrieval by the public on March 3rd, 2006. That's not a complete answer, though. What do we know? What does he mean by available? Available on the shelf? That's fine, but that's not good enough. Well, he... There's probably a lot of shelves in that library. Well, there may be, but again, in his declaration, and again, this was subject to cross-examination, and this goes to the present tense issue. He testifies to be precise that he's been using the library since 1994, and this is at page 1618 of the record. Right, and there's an online catalog. Somebody doesn't describe the details of how the online catalog system worked back during the critical time period, which is before 2010 or maybe even before 2009. This text, this testimony is meant to describe what has happened since the Atiano dissertation was deposited, and I think that was the board's interpretation of this, and it's a reasonable one. He talks about the use of the library since 1994. In the next sentence, he says, the online catalog allows for easy electronic searching of holdings. He doesn't say it's just now. He's talking about the online catalog as it was available throughout the time. Now, when was it specifically available? Yes, he didn't testify to that, but he does go on and say that that online catalog, which again is what was there at the library, allowed any member of the public to search for it and locate it. So, I think a reasonable inference, and the inference that the board drew from that was that his knowledge of the library, he's a recipient witness. This is something that's required for all doctoral students. The whole point is to make the dissertations publicly accessible. I asked you for the copyright certificate, and you referred me to the catalog printout. Do you have the copyright certificate in there somewhere? It's not in the record, I believe, Your Honor. Because that might answer your question right there. I apologize for not answering directly the question, but the copyright certificate is not in the record. What we have is the screenshot. But again, at the end of the day, the question is public accessibility. It's a constellation of information. We have the actual document. It has an ISBN number, an ISSN number. It's put in a library. You can take judicial notice. You're asking us to make inferences, and maybe those inferences are reasonable, but I think all of us are struggling with the idea, well, if this was the case, if the inferences lead to where you say they lead to, why didn't you provide that information? It was so easy to do it. I mean, here we've got proceeding before the board, an appeal here. This could have been solved by a sentence in his declaration or testimony. And, Your Honor, we're not asking for the inferences to be made. What we're asking is for determination or confirmation that the board had evidence. That they could make the inferences. Right, and so they looked at this evidence. They drew an inference, and the question on appeal is, under the substantial evidence standard, is that correct? And that's the approach to our argument here, and I think the answer to that is a resounding yes. Could things be done additionally? Sure. I mean, hindsight is often 20-20. The reality here is we have a recipient witness. It wasn't quite hindsight. I mean, any patent lawyer knows when it comes to printed publication, public accessibility of a book in a library, In Re Hall is the touchstone of that inquiry. And you know from In Re Hall, you need to prove up that the book was indexed, and therefore searchable. And so, therefore, you go to the librarian and say, whoever was the librarian for the critical date, that book that was on the shelf, was it actually indexed in some way? That's it. And although we don't have a declaration, we do have Exhibit 1034 at page 1566, which is the librarian letter that provides the shelving record and information. This is something that the board didn't rely on, right? No, actually, it is cited in their final written decision. Oh, they relied on this letter? Partially? My understanding is the board did not rely on this letter from 1566. This email. Exhibit 1034 is cited at appendix page 16 of the final written decision. The board points out that Dr. Grazer confirmed that he'd reviewed the shelving records at the university. Exhibit 1034. And Exhibit 1034 is the document at appendix page 1566. Did the board rely on it? Yes. You're describing what the board described was your position. I see the board's analysis on its findings and its analysis beginning on the following date. A-17. Right. Carrying over all the way through A-20. And if you look at A-17 through A-20, I don't think you'll find a citation to this particular exhibit. Or am I wrong? Well, they provide a recitation of our evidence, and then they say, we find this record establishes by a preponderance of the evidence. Right, and then it goes through a number of the exhibits that you proposed, not including this one. This one was disputed over hearsay and other objections. And then it seems to me that the board stepped around that issue by just relying on other exhibits that didn't have those kinds of disputes. I guess I don't read the final written decision that way. I read them, they summarize what our evidence is, and then they say based on that record, which includes Exhibit 1034, that they considered that preponderance of the evidence to establish accessibility. They go on to point out, as you noted on pages 18 and 19, some of the additional issues that appellant raised, including theories they've abandoned subsequently about which particular document was the publication. And addressing some of the case law as well. But that is part of the record. It's part of what they considered. And again, it's just one aspect of a constellation of things. The fact that it was checked out of the library, in and of itself, ought to be enough. I mean, there were some questions asked about judicial function. The function of libraries, particularly a university library, is to access documents, or in this case, books, that contain information that people are looking for from a technical standpoint. Dr. Browser indicated that he searched for virtual and welding and it popped up. Is there a question that, could that mean that it wasn't available prior to that? It may or may not be, but on appeal, the question is, was that a reasonable inference for the board? They say here, based on the record, we find it was published in book form by Shaker Verlag. It's on top of 18. Yes. So, and I apologize, Your Honor, the question is? No, I mean, they actually made a finding about it being published in book form. Correct. And we have Exhibit 1068 in the record, which is the publisher's letter, which says in no uncertain terms that it was available electronically, that it was available in book form, in printed edition, all years before the critical date. This isn't one of these situations where there's a question about timing. Was something shelved and cataloged prior to the critical date? This was years before. Well, part of their argument is that, yes, it may have been cataloged as of 2016, but we don't know when it was cataloged before then. Well, again, if we look at the librarian letter with the shelving record, that is evidence of when the data was input. That's evidence of when it was actually available. And again, we have the testimony of Dr. Grasso that was subject to cross-examination, where he says this was what was required. He had to go deposit in the library. It had to be shelved. They purposely picked Shaker Verlag as a publisher to make sure it had wide dissemination. It was in English. It had to be published. That was the whole point, to make it publicly accessible. The fact of the matter is that even if there is some question about cataloging, an awful lot of the time people do research by walking over to where one book is shelved and looking at the other books in the section. And if it was shelved with other books about welding or teaching or whatever, they'd find it that way as well. I would agree, Your Honor. Another factor in terms of public accessibility, it's case-by-case, fact-dependent. Here there's a mountain of evidence that points in a direction. On the other hand, there's no evidence pointing in the other direction. There was no evidence that was developed to show that our testimony and our evidence on the issue of accessibility was incorrect. It could have equally gone to the librarian and said, Hey, is this actually the way it is? Nothing of that sort. Okay, I think we're out of time, Mr. Pimentel. Thank you. Thank you so much. Mr. Cianfrana, you've got two minutes. Thank you, Your Honor. I'd like to start by answering Judge Wallet's question from a moment ago. Yes, there are lots of ways to find things in a library. And sometimes if you just go to the area where welding books are, you might find some welding books. But there's no evidence that that was the case in the University of Bremen Library with respect to these issues. You know, counsel, I think your problem is what the Brits say, that you were too clever by half. You thought you had laid a trap for your opponent by saying they don't have, what they have is hearsay. And I'm just going to rely on that. I'm not going to try to disprove their case. And it's pretty evident that you could have. I don't know what was done that you didn't put in. It's not in the record. But it just suits your position. My only response to that, Your Honor, is I don't know that the librarians could be made available for deposition. I can't speak to whether we tried or didn't try because it's just not in this record. I taught in German law schools for 11 years and German librarians, university librarians like American university librarians and others, tend to want to help people. All you have to do is ask. Understood, Your Honor. With respect to your earlier question about the copyright certificate, there is no evidence in the record of any copyright certificate that I know of, or any evidence about how the German copyright system worked in this case or worked generally. And so this entire issue is a lack of evidence that was their burden to produce. You don't need evidence on that. It's a matter of law. Thank you, Your Honor. I'll see you later. Thank you. Thank both counsel. The case is submitted. Our next case is number 18-13.